UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CENTRAL TOOLS, INC.,

Plaintiff,

v.

MITUTOYO CORPORATION,
MITUTOYO AMERICAN CORPORATION, and
C.E. JOHANSSON AB,

Defendants.

C.A. 04-68S

**DECISION AND ORDER**

William E. Smith, United States District Judge.

I. Introduction

Central Tools, Inc. ("Central"), a Rhode Island corporation, brought this action seeking a declaratory judgment for, among other things, noninfringement and invalidity of patent, U.S. Patent No. 4,743,902 (the "902 Patent"),[1] against: C.E. Johansson AB ("CEJ"), the owner of the 902 Patent; Mitutoyo Corporation ("Mitutoyo"), a

[1] Specifically:

> In this action, Central Tools, Inc. ("Central") seeks declarations that U.S. Patent No. 4,743,902 (the "'902 Patent") is invalid, expired, and/or unenforceable, that the defendants have misused the '902 Patent, that the products offered for sale by Central do not infringe any valid and enforceable claim of the '902 Patent, that this is an exceptional case, that an alleged agreement between Central and one of the named defendants is void, invalid, and unenforceable, and that Central has not breached the alleged agreement.

(Compl. at ¶ 1.)

Japanese corporation and the exclusive licensee of that portion of the 902 Patent covering length measuring devices;[2] and Mitutoyo American Corporation ("MAC"), a subsidiary of Mitutoyo serving as Mitutoyo's American distributor (collectively, "Defendants"). Defendants have moved to dismiss this action for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Defendants' motion is granted.

II. Background

The Court takes Plaintiff's well-pleaded allegations as true for purposes of this motion. See Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003) ("In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's

---

[2] The 902 Patent covers:

> A system for measuring the relative movement of one object with respect to another, such as the movement of a slide with respect to a scale of a measuring instrument utilizes the capacitative effect of a series of electrodes associated with a slide and another series of electrodes associated with the cooperating scale, the changes in capacity caused by relative movement between the two members being analyzed by an electronic circuit.

U.S. Patent No. 4,743,902 (issued May 10, 1988) (reproduced verbatim). The license agreement between CEJ and Mitutoyo grants Mitutoyo, in relevant part, "the exclusive, non-transferable, fully paid-up, worldwide right to use [CEJ]'s Patent Rights . . . with the sole purpose to achieve measurement of length." (Defs.' Reply Ex. 4 at 15.)

favor."). Furthermore, the Court "may consider public records without transforming the motion into one for summary judgment." Greene v. Rhode Island, 289 F. Supp. 2d 5, 8 (D.R.I. 2003). And finally, when "a complaint's factual allegations are expressly linked to--and admittedly dependent upon--a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and [this Court] can review it in deciding a motion to dismiss." Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).

Central sells measuring devices such as the length measurement device which is covered by the 902 patent. Since 1995, Central has been in direct communication with Mitutoyo regarding a disagreement about the 902 Patent. Mitutoyo initiated the correspondence by sending a letter to Central accusing Central of infringing on Mitutoyo's exclusive right to control the sale of the length measuring devices covered by the 902 Patent by selling similar devices made in China. The parties engaged in correspondence on the matter throughout 1995. (Compl. at ¶¶ 17-23.)

On September 15, 1995, Mitutoyo wrote to Central with an offer: If Central stopped selling the length measuring devices made in China, Mitutoyo would not hold Central liable for past infringements. (Letter of 9/15/1995 from Mitutoyo to Central.) Central responded to this proposal on September 27, 1995. Without admitting liability or the validity of the patent, Central agreed

not to sell or place future orders for the allegedly infringing goods. (Letter of 9/27/1995 from Central to Mitutoyo.) The parties then entered into an agreement (the "Agreement") whereby Central would cease marketing the allegedly infringing goods and Mitutoyo would not pursue any claims regarding past sales.

Following the Agreement, Central found itself at an economic disadvantage because other competitors continued to sell the allegedly infringing goods. Central concluded from this that either there was no infringement or that Mitutoyo was selectively enforcing the patent, rendering it unenforceable. As a result, Central terminated the Agreement. (Letter of 11/7/1995 from Central to Mitutoyo.) In response, Mitutoyo wrote to Central objecting to the termination of the Agreement. (Letter of 12/8/1995 from Mitutoyo to Central.) The two companies exchanged correspondence for seven years with no resolution, ultimately leading to the filing of this action.

## III. Discussion

Claims concerning personal jurisdiction over a party in a declaratory judgment action involving patent invalidity are governed by Federal Circuit law. Electronics for Imaging, 340 F.3d at 1348. Federal Circuit law also governs personal jurisdiction issues involved in state law claims that go "hand-in-hand" with patent infringement claims, such as Central's claim here regarding

the validity/breach of the Agreement.[3] 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1998) (concluding that state law libel and unfair competition claims should be analyzed under Federal Circuit law "because the resolution of the patent infringement issue will be a significant factor in determining whether or not 3D libeled the defendants"). Finally, procedural issues that may be critical to analysis of the Motion to Dismiss (such as whether CEJ is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure) are resolved under this Court's regional circuit law. Bayer AG v. Housey Pharms., Inc., 340 F.3d 1367, 1371 (Fed. Cir. 2003) ("We review the grant of a motion to dismiss under Rule 12(b)(6) by applying the procedural law of the regional circuit."); Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc., 142 F.3d 1266, 1269 (Fed. Cir. 1998) ("[w]hether a party is indispensable under Rule 19(b) is a matter of regional circuit law").

In this case, Defendants argue, among other things, that CEJ, as the owner of the patent,[4] is an indispensable party not subject

---

[3] (See Compl. at ¶¶ 37, 38, 40, 41 (tying contract claims to validity of the 902 Patent).)

[4] The 902 Patent was originally issued in 1988 to Nils Andermo, a Swedish citizen, who assigned the patent with its foreign counterparts ("Andermo patents") to the Stiftelsen Institutet for Mikrovagsteknik vid Tekniska Hogskolan ("Stiftelsen Institute") of Stockholm, Sweden. The Stiftelsen Institute first licensed, then assigned the Andermo

to personal jurisdiction, and thus this action cannot proceed here. Central, meanwhile, argues CEJ is not beyond the jurisdictional reach of this Court, and even if it is, it is not an indispensable party.

A. Is CEJ Subject to the Personal Jurisdiction of this Court?

"Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction would violate due process." Id. at 1270. Where, as here, the state's long arm statute is co-extensive with the limits of due process, see KVH Indus., Inc. v. Moore, 789 F. Supp. 69, 70 (D.R.I. 1992), "the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process," Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001). Thus, the ultimate inquiry turns on whether there are sufficient contacts between the defendant and the State of Rhode Island. Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424, 427 (Fed. Cir. 1996).

Personal jurisdiction over a defendant may be based on either specific or general jurisdiction. Specific jurisdiction refers "to a situation in which the cause of action arises directly from the

---

patents, including the 902 patent, to [CEJ].

Central Purchasing, Inc. v. Mitutoyo Corp., No. CV 95-2014 JGD (GHKx), slip op. at 2 (C.D. Cal. Dec. 6, 1995).

defendant's contacts with the forum State." Id. General jurisdiction, of course, looks more broadly "to the situation in which the defendant's contacts [with the forum state] have no necessary relationship to the cause of action." Id.

As noted above, Central argues that CEJ is either not an indispensable party to this action, in which case the Court's lack of personal jurisdiction over CEJ is no bar to this action proceeding, or is an indispensable party and thereby becomes subject to the Court's jurisdiction via Mitutoyo's agency. As to the latter argument, Central cites Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) wherein the Supreme Court stated that in analyzing issues of personal jurisdiction, "when commercial activities are 'carried on in behalf of' an out-of-state party those activities may sometimes be ascribed to the party." 471 U.S. at 480 n.22. Central argues that if CEJ is indeed an indispensable party to an action involving the 902 Patent because it retained substantial rights in that patent, then all of Mitutoyo's threats of litigation in defense of the 902 Patent must have been made by Mitutoyo on behalf of CEJ because Mitutoyo lacks the power to bring such an infringement action on its own. (See Pl.'s Obj. at 19 (citing Abbott Labs. v. Diamedix Corp., 47 F.3d 1128, 1132 (Fed. Cir. 1995) (holding that where patent owner licensor retained substantial rights under license agreement, licensee did "not have an independent right to sue for infringement")).) But see

Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc., 248 F.3d 1333, 1346-47 (Fed. Cir. 2001) (noting that "the Supreme Court has stated that a patent owner that grants 'the exclusive right to make, use, or vend [a patented invention], which does not constitute a statutory assignment . . . must allow the use of his name as plaintiff in any action brought by the licensee . . . to obtain damages for the injury to his exclusive right'") (quoting Indep. Wireless Tel. Co. v. Radio Corp. of Am., 269 U.S. 459, 469 (1926)) (emphasis in original). In support of its argument that CEJ is subject to the personal jurisdiction of this Court by way of some type of Burger King agency theory, which is Central's only argument for finding personal jurisdiction over CEJ, Central relies on Akro Corp. v. Luker, 45 F.3d 1541 (Fed. Cir. 1995).

For purposes of analyzing Plaintiff's argument, the Court will assume it has personal jurisdiction over Mitutoyo (which it must in order to conclude Mitutoyo subjected CEJ to the jurisdiction of this Court via its actions as CEJ's "agent") as a consequence of Mitutoyo's enforcement activities in defense of its exclusive license. See id. (concluding combination of letters directed at alleged infringer and license agreement with in-state company subjected out-of-state patent owner to personal jurisdiction). Central relies on Akro to press the point that "[t]o reject the argument that there is jurisdiction over CEJ if there is jurisdiction over Mitutoyo, would both 'ignore basic principles of

agency law and exalt form over substance in an area where the Supreme Court generally has cautioned against such an approach.'" (Pl.'s Obj. at 20 (quoting Akro, 45 F.3d at 1546) (internal citation omitted).) Akro, however, is not on point. To begin with, while the Federal Circuit in that case did rely in part on the relationship between the patent owner and its exclusive licensee to find personal jurisdiction over the out-of-state patent owner, the significance of that relationship was that the licensee was a resident of the state in which jurisdiction was sought (in that case, Ohio). Akro, 45 F.3d at 1546. Here, Mitutoyo is incorporated in Japan, not Rhode Island. Furthermore, the Akro court relied on agency principles simply to allow the letters sent by the patent owner's counsel to the alleged infringer's counsel in North Carolina to be deemed to have been directed to the alleged infringer in Ohio. Id. Agency principles were not used, as Central seeks to use them here, to ascribe activities on the part of the licensee to the patent owner. In fact, Central directs the Court to no case where the actions of a licensee, taken to protect its rights under an exclusive license agreement, were ascribed to the patent owner for the purposes of establishing personal jurisdiction. (See Pl.'s Obj. at 18-21.)

The actions Mitutoyo took to defend its rights to manufacture, market and sell the length measuring devices at issue here were on its own behalf. The license agreement between CEJ and Mitutoyo

gives Mitutoyo "the sole right at its cost to take legal actions against and collect damages for any infringement of [CEJ]'s Patent Rights to the extent that such infringement is invading the exclusive rights of [Mitutoyo]." (Defs.' Ex. 4 at 16.) "In such cases [CEJ] shall assist [Mitutoyo] and, upon request of [Mitutoyo], furnish [Mitutoyo] with any information or evidence which is available and material to the proper defense or prosecution of such actions." (Id.) Were Mitutoyo defending the rights granted to it under the license agreement on behalf of CEJ, one would expect the preceding provision to be very different. At the very least, the Court will not read the parties' agreement as precluding Mitutoyo from bringing an infringement action on its own behalf. In light of the foregoing, the Court concludes that CEJ is not subject to the personal jurisdiction of this Court under Plaintiff's agency theory.

B. Is CEJ an Indispensable Party?[5]

Having concluded that CEJ is not subject to the personal jurisdiction of this Court, the next question becomes whether CEJ is an indispensable party. If it is, the case must be dismissed. The Court will analyze the indispensability of CEJ under Rule 19 of

---

[5] Defendants assert that the rule of Indep. Wireless Tel. Co. v. Radio Corp. of Am., 269 U.S. 459 (1926), that the patent owner is an indispensable party to a patent infringement claim, remains true regardless of the declaratory judgment nature of the action. In support of this contention, they cite a treatise for the proposition that "[a]n absent party (such as a patent owner or exclusive licensee) is a necessary or indispensable party on the defendant side if that party would have been such in an infringement suit." Donald S. Chisum, Chisum on Patents § 21.03[4] (hereinafter Chisum). This statement, however, is cited out of context by Defendants. The full statement reads as follows:

> Problems with standing and necessary and indispensable parties become even more complicated with suits for a declaratory judgment of invalidity and/or noninfringement.
>
> The simplest position is to treat such an action the same as an infringement suit insofar as joinder of parties is concerned with only the parties being reversed. Thus, a person is a proper party defendant if but only if that person had standing to sue the plaintiff for infringement. An absent party (such as a patent owner or exclusive licensee) is a necessary or indispensable party on the defendant side if that party would have been such in an infringement suit. This position is an attractive one in that a declaratory action is often functionally equivalent to an infringement action. Further, the defendant usually will assert an infringement claim as a counterclaim. Nevertheless, there is some basis for concern that application of party principles from infringement suits may operate to deprive unfairly an aggrieved accused infringer of its right to file a declaratory suit in the forum of his choice.

Id. (internal footnotes omitted).

the Federal Rules of Civil Procedure.[6] Rule 19(a) provides, in relevant part, the basis for finding a party necessary:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if . . . the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect that interest . . . .

Fed. R. Civ. P. 19(a). Here, CEJ is a necessary party because it retains substantial rights in the 902 Patent and those rights would be impaired were this Court to conclude the 902 Patent was invalid.

The conclusion that CEJ retains substantial rights in the 902 Patent is based on the fact that the 902 Patent covers both length measuring devices as well as rotational displacement measuring devices (Defs.' Reply at 2), and Mitutoyo has received an exclusive license only as to the length measuring devices (see Pl.'s Ex. 4 at 15 (Amendment No. 2 to Patent Sub-license Agreement of September 1, 1983, between CEJ and Mitutoyo)). Because both the length measuring and rotational displacement measuring devices are covered under the same claim of the 902 Patent,[7] the validity of both

---

[6] Neither of the parties mentioned Rule 19 in their briefs. However, Rule 19 provides the proper mode of analysis here. See Dainippon, 142 F.3d at 1272 (applying Rule 19 analysis to question of party indispensability in declaratory judgment action).

[7] The 902 Patent contains three claims (which are set out verbatim):

> We claim:

---

1. A measuring device for capacitative determination of the relative position of two relatively movable parts with respect to one another comprising a slide provided with a number of groups of supply electrodes distributed along the direction of relative movement, each of the groups having n number of supply electrodes, n being an integer greater than 2; signal generator means having n number of signal outputs, each of the supply electrodes in each group being connected to a respective one of said signal outputs whereby all supply electrodes are supply with voltages according to a cyclic pattern, the slide also being provided with at least one receiving electrode; a signal processing unit connected to at least one receiving electrode; a scale being provided with a single electronic pattern comprising internally galvanically isolated scale electrodes, each scale electrode comprising two mutually galvanically connected parts, one being a detecting part and being located close to the area of the scale over which the supply electrodes of the slide can be moved, the other of the two parts being a transferring part and being located close to the area over which the at least receiving electrode of the slide can be moved, whereby the position of the slide along the scale determines the signal from the at least one receiving electrode which is derived from at least two adjacent supply electrode signals and the position of the slide with respect to the scale can be determined by the identification in the signal processing unit of the phase position of said signal from the receiving electrode.

2. The measuring device according to claim 1, wherein said signal generator means having n number of signal outputs generates n periodical signals of the same amplitude and frequency whereby the signals are phase displaced with respect to each other by N.multidot.(360/n) degrees, where N is an integer.

3. The measuring device according to claim 2, wherein the n phase generator means includes means to supply electrodes with a rectangular voltage and the signal from said at least one receiving electrode is subject to an average value determination during a particular time period whereby the received voltage is a function of the phase position of the time period with respect to the

either stand or fall together. In other words, while this Court can invalidate particular claims within a patent without invalidating the entire patent, the Plaintiff has cited no authority for the proposition that the Court can invalidate a particular claim as to only a particular device created thereunder without invalidating the entire claim. Cf. Maloney-Crawford Tank Corp. v. Sauder Tank Co., Inc., 465 F.2d 1356, 1365 (10th Cir. 1972) (stating that, while finding a particular claim within a patent invalid does not invalidate the entire patent, individual claims "stand or fall alone"). Thus, while it may be somewhat of a close call, the Court concludes that it may not parse the claim so finely as Plaintiff would like, so as to excise those parts of the claim to which CEJ retains an interest. Furthermore, the substantial rights in the 902 Patent retained by CEJ would be impaired were this Court to invalidate the 902 Patent because, at the very least, "such a judgment would have a prejudicial effect on the licensors' interests even if not absolutely binding." Messerschmitt-Boelkow-Blohm GmbH v. Hughes Aircraft Co., 483 F. Supp. 49, 53 (S.D.N.Y. 1979).[8] Thus, the Court concludes that CEJ

---

> rectangular voltage and of the position of the slide with respect to the scale.

(Defs.' Reply Ex. 5.)

[8] "The courts have expressed some ambivalence about whether a decision concerning issues of patent validity would have a collateral estoppel effect upon a patent owner who did not appear in the action." Parkson Corp. v. Andritz Sprout-Bauer, Inc., 866

F. Supp. 773, 776 n.1 (S.D.N.Y. 1994). Compare Suprex Corp. v. Lee Scientific, Inc., 660 F. Supp. 89, 93 (W.D. Pa. 1987) ("A determination by this court of invalidity of the patent, as a practical matter, impairs the [patent owner]'s ability to defend the patent in later litigation, due to collateral estoppel implications."); and Messerschmitt, 483 F. Supp. at 52 ("The plaintiff notes the general rule . . . that licensors are bound by a judgment of invalidity in a declaratory judgment action . . . ."); with Capri Jewelry Inc. v. Hattie Carnegie Jewelry Enters., Ltd., 539 F.2d 846, 853 (2d Cir. 1976) (Friendly, J.) ("The judgment of non-infringement will not be binding or work as a collateral estoppel on [the patent owner] (although it will, of course, be damaging as a precedent) unless he has controlled or substantially participated in the presentation . . . ."); and A.L. Smith Iron Co. v. Dickson, 141 F.2d 3, 6 (2d Cir. 1944) (Hand, J.) (noting that a judgment of non-infringement would not be binding on the patent owner). Two Supreme Court cases bear directly on this issue: Blonder-Tongue Labs., Inc. v. University of Illinois Found., 402 U.S. 313 (1971); and Indep. Wireless Tel. Co. v. Radio Corp. of Am., 269 U.S. 459 (1926). Blonder-Tongue stands for the proposition that a patent owner will only be estopped from asserting the validity of a patent that has previously been declared invalid if he has had a full and fair opportunity to litigate the validity of the patent in the prior suit. 402 U.S. at 333. Independent Wireless, meanwhile, stands for the proposition that a patent owner not subject to process, may be named by his exclusive licensee as an involuntary co-plaintiff so as to allow the case to go forward, and will be held bound by the resolution of such case so long as he was given the opportunity to participate. 269 U.S. at 473. Arguably, the objection certain courts have to holding the patent owner bound (based on the fact that he never had a full and fair opportunity to litigate the claim) is answered by the fact that, as per Independent Wireless, he will have been given that opportunity (though there are numerous exceptions to this). See Parkson, 866 F. Supp. at 776 n.1 ("These cases have involved analysis of the Supreme court's decision in [Blonder-Tongue] which suggests that a patent holder who never appears might not be bound. However, the point of Independent Wireless Telegraph seems to be, in part, that this precise problem is avoided by giving the absent patent owner notice of its obligation to participate in the litigation."). Certainly in this case, CEJ will have had the opportunity to participate and thus arguably should be bound, thus leading to the conclusion that CEJ's rights will be impaired. A further question, however, is whether the effect of CEJ's refusal to participate should count in its favor as to the prejudice prong of the 19(b) indispensability analysis. This issue will be

retains substantial rights in the 902 Patent, and that CEJ's ability to protect those rights would be impaired by a declaration of invalidity by this Court, making CEJ a necessary party to this action. See Zenith Elecs. Corp. v. ExZec, Inc., 876 F. Supp. 175, 179 (N.D. Ill. 1995) (concluding licensee was necessary party to patent infringement action under Rule 19(a) because the license agreement "transfers all substantial ownership rights" to the licensee).

Having concluded that CEJ is a necessary party not subject to the personal jurisdiction of this Court, the analysis turns to "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed. R. Civ. P. 19(b). Rule 19(b) sets out four factors this Court must consider:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Id.

---

addressed below.

The question of prejudice has already been addressed, at least in part, in the preceding 19(a) analysis.[9] See Gonzalez v. Cruz, 926 F.2d 1, 6 (1st Cir. 1991) ("In this case, the first factor under Rule 19(b) seems to weigh in favor of dismissal. Although the insurer would not be bound by the judgment in federal court, an adverse ruling could, as a practical matter, impair its probability of success in a future proceeding and reduce its ability to reach a favorable settlement."). In addition, CEJ would be prejudiced because its interests would not be adequately defended by Mitutoyo. See Pujol v. Shearson/American Express, Inc., 877 F.2d 132, 135 (1st Cir. 1989) (asking whether absent party's interests would be adequately protected as part of 19(b) analysis). Mitutoyo does not have as expansive an interest in the 902 Patent as CEJ, which retained its rights as to "dimensional measuring instruments." (Defs.' Reply Ex. 4 at 15 ("Licensor shall grant to Licensee . . . the non-exclusive, non-transferable, fully paid-up, worldwide right to use Licensor's Patent Rights for manufacture, market, sales and use of Products for any application within the field of dimensional measuring instruments.") (emphasis added).) Therefore, Mitutoyo

---

[9] Central argues that because the 902 Patent has expired there is no threat to CEJ in this case. In other words, the only live action is the one Central is seeking declaratory judgment on: an action by Mitutoyo for past infringement of the 902 Patent as to length measurement devices. However, were this Court to declare the 902 Patent invalid, it would preclude CEJ from enforcing its right under the patent to exclude others, which may have been violated in the past and not yet discovered.

may advance a construction of the 902 Patent claim at issue here that is narrower than CEJ would. For these reasons, the Court concludes a judgment rendered in CEJ's absence could be prejudicial to CEJ.[10]

The second factor, the Court's ability to shape relief to avoid prejudice, also favors finding CEJ to be an indispensable party because, as noted above, the relevant claim of the 902 Patent cannot be subdivided into one claim covering length measuring devices and another claim covering rotational displacement

---

[10] As is often the case in matters of jurisdiction, there are competing interests here. On the one hand, there is the interest of Central in resolving this dispute and not being forced to do so in a distant forum. See Dickson, 141 F.2d at 6 ("it would be obviously unfair to leave its business exposed to continuous indirect attack, merely to preserve the company's choice of forum"). On the other hand, there is the interest of CEJ in not being hailed into a foreign court unfairly and not having its patent rights adjudicated in its absence. Of course, the latter point as to CEJ is a bit of a double-edged sword. It is hard to garner much sympathy for CEJ as being "prejudiced" by not being able to defend its interests when all it needs to do to cure that prejudice is show up. See Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 636 (1st Cir. 1989) ("A court can properly consider ability to intervene when assessing the interest of an absent party for purposes of the indispensability determination under Rule 19(b).") (citing Takeda v. Northwestern Nat'l Life Ins. Co., 765 F.2d 815, 820 n.5 (9th Cir. 1985) (citing Criswell v. Western Airlines, Inc., 709 F.2d 544, 557 (9th Cir. 1983) ("First, ALPA is not prejudiced here; the organization apparently reached that conclusion itself when Western contacted it at the request of the court to inform it of the action and to inquire whether it wished to intervene. ALPA chose not to."))). Nonetheless, the right to be free from being hailed into a foreign court unfairly would become a right in name only if a court could wash its hands of prejudice resulting from absence by putting the onus on the absent party. This is especially true where, as here (as will be discussed below), a reasonable alternative forum exists.

measuring. But see Dainippon, 142 F.3d at 1272-73 ("The second factor, the court's ability to shape relief to avoid prejudice, is of little relevance in the context of a patent declaratory judgment suit because the relief sought in such a suit does not depend upon the patentee's presence in court.").

"The third factor, adequacy of the judgment, favors maintenance of the suit in [CEJ]'s absence because a declaration of invalidity or noninfringement would fully serve [Central]'s interest in ensuring that it is free from claims of patent infringement irrespective of [CEJ]'s absence." Id. at 1273; see also Dickson, 141 F.2d at 6.

Finally, the fourth factor, whether Central will have an adequate remedy if the case is dismissed favors dismissal because, as Defendants concede (Tr. at 7, 20) and Central does not contest, this action can be brought in the District of Columbia pursuant to 35 U.S.C. § 293. See Chisum, § 21.02[3][d] ("Section 293 operates as a special 'long-arm' statute, providing jurisdiction over a United States patentee who does not reside within the United States and who has not made a designation of a resident agent on whom process may be served. Its primary purpose is to provide at least one available forum where persons charged with infringement of a United States patent held by a person residing abroad may file an action for a declaratory judgment of invalidity and/or noninfringement. The jurisdiction is only in the United States

District Court for the District of Columbia."); see also H.D. Corp. of Puerto Rico v. Ford Motor Co., 791 F.2d 987, 993 (1st Cir. 1986) ("Fourth and finally, it follows from what we have said that plaintiffs have an adequate remedy in the commonwealth courts to vindicate their claims against both Ford and Ford Caribbean."). In sum, the evaluation of these factors support finding CEJ to be an indispensable party to these proceedings.[11]

IV. Conclusion

In light of the foregoing, the Court concludes CEJ is an indispensable party not subject to the personal jurisdiction of this Court, and therefore GRANTS Defendants' Motion to Dismiss.

IT IS SO ORDERED,

William E. Smith
United States District Judge
Date: 8/11/05

[11] Because the Court concludes CEJ is an indispensable party not subject to personal jurisdiction, the issue of personal jurisdiction over Mitutoyo need not be addressed.